We'll hear argument this morning in Case 16-402, Carpenter v. United States. Before we commence, though, I'd like to advise counsel that I'll provide an additional 10 minutes of them to their argument time. I don't think you'll have trouble filling it. Mr. Wessler. Thank you, Mr. Chief Justice, and may it please the Court. At issue in this case is the government's warrantless collection of 127 days petitioner's cell site location information, revealing his locations, movements, and associations over a long period. As in Jones, the collection of this information is a search, as it disturbs people's longstanding practical expectations that their longer-term movements in public and private spaces will remain private. So what is the rule that you want us to adopt in this case, assuming that we keep Miller v. Smith v. Maryland on the books? The rule we seek is that longer-term periods or aggregations of cell site location information is a search and requires a warrant. We are not asking the Court to overturn those older cases. We think that the lesson to be drawn from Riley and Jones and Kylo is that any extension of pre-digital precedents to these kinds of digital data must rest on their own bottom. How would you distinguish Miller? Miller involved more limited records. Certainly they could reveal some sensitive information, but more limited records. And as this Court held, they were voluntarily conveyed, in that they were created by the passing of negotiable instruments into the stream of commerce to transfer funds. What we have here is both more sensitive and less voluntary. Why is it more sensitive? Why is cell site location information more sensitive than bank records, which particularly today, when a lot of people don't use cash much, if at all, a bank record will disclose purchases. It will not only disclose everything that the person buys. It will not only disclose locations, but it will disclose things that can be very sensitive. I absolutely agree, Justice Alito, that the information in bank records can be quite sensitive. But what it cannot do is chart a minute-by-minute account of a person's locations and movements and associations over a long period, regardless of what the person is doing at any given moment. I understand that, but why is that more sensitive than bank records that show, for example, periodicals to which a person subscribes or hotels where a person has stayed or entertainment establishments that a person has visited and all sorts of other things? Particularly because the information in the bank records that Justice Alito referred to are not publicly known. Your whereabouts are publicly known. People can see you. Surveillance officers can follow you. It seems to me that this is much less private than the case that Justice Alito is discussing. I don't agree, Your Honor, for the following reason. When a person is engaged in a financial transaction, passing a check, a negotiable instrument, that's an interpersonal transaction where a person has full knowledge that they are putting something into the stream of commerce to transfer funds directed at their bank. As the five concurring justices made clear in Jones, although we may, when we step outside, have a reasonable expectation that someone may see where we go in a short period, nobody has expected in a free society that our longer-term locations will be aggregated and tracked in the way that they can be here. You keep emphasizing longer terms. Yes, I was going to ask about that. Now, suppose what was thought here was the CSLI information for the day of each robbery, just one day, the day of each robbery. Does that qualify as short-term in your view that would not violate the Fourth Amendment? So, Your Honor, the rule we proposed would be a single 24-hour period, contiguous 24-hour period. Now, the only other court to address this question is the State. I'm sorry. In which way are you talking about? What rule? So, we don't think the court needs to draw a bright line here to define exactly where the line between short and long-term is. But as we pointed out in our reply brief. But Justice Ginsburg is not asking you about 24 hours or anything else. She's asking you about a tower dump. Crime happens at a bank. The teller says or doesn't say that the robber, she saw the robber on the phone at some point. Could the police just get a tower dump at the cell site to see who was in that area at that time? Justice Sotomayor, yes. I think that would not be affected at all by this case. So, what's the difference between a tower dump and targeting a particular individual? Let's say an anonymous call came in that said John X or John Doe was the robber. Could the police then say to the telephone company, let me see the records of John Doe for that hour or for that day or whatever the duration of the crime was? Yes, that would be perfectly acceptable. Can we go back to my question? You said 24 hours roughly. So, if there were only one robbery, would you get that information? But now there are how many, eight? So, we can't get it for eight, but we can get it for the one? So, Your Honor, we've suggested 24 hours. I think that the most administrable line, if the court wishes to draw a bright line, would be a single 24-hour period. But this court could craft other reasonable ways to draw that additional line. If it's reasonable for one robbery one day, why wouldn't it be equally reasonable for each other robberies? I think the risk is a risk of circumvention of this court's rule from Jones and of whatever the durational requirement is. Some types of crimes will be quite easy to delineate a certain set, limited set of days that information might be worth getting. Others will be more difficult. Now, in this case, it doesn't matter to us actually where the court draws that line because 127 days of data. But the longer term is more corroborative, perhaps, of innocence. Suppose he's in the area every day for 120 days. That's because of where he shops and so forth. It seems to me that the rule you're proposing might be to avoid exculpatory information. Well, Your Honor, we would fully expect that if the government obtained a short period of data that appeared to be inculpatory, that would provide probable cause for a warrant to gather a much wider amount of data if needed. Or in the pretrial process, the defendant him or herself could obtain other records from the carrier and use those as exculpatory evidence. The concern here is with the privacy invasion, which is quite severe over the long term, over these more than four months of data. It would help me understand the basis for the 24-hour or however long you want it to be exception. It seems to me if there's going to be protection extended to the information, it has to involve some compromise of the third-party doctrine. And if that is altered, I don't see why it wouldn't also apply to one day of information. So the only other court to address this question is the Supreme Judicial Court of Massachusetts, which drew the line at six hours. We have suggested 24 hours because we don't understand what is the line we're drawing. It seems to me the line is between information to which the authorities have access and information to which they don't. I don't know why we are bothering about a line between six hours, three weeks, whatever. Well, Your Honor, certainly we would be perfectly happy with a rule from this court requiring a warrant as a per se matter. What we are trying to advance is a suggestion to the court that takes into account the rationale of the concurrences in Jones and that accords with people's reasonable expectation that although police could have gathered a limited set or span of past locations traditionally by canvassing witnesses, for example, never has the government had this kind of a time machine that allows them to aggregate a long period of people's movements over time. Well, another thing the government's never had is the ability to go back even for 24 hours and basically test everybody, everybody in the whole community or anyone who happened to be there. So I don't know why that isn't a consideration that cuts against preserving 24 hours two months ago. The government didn't have the capability of tracking a particular individual or every individual, and they find out later that's the one they want. So I don't understand the coherence of your argument on that. I do think that a different concern would be raised by the tower dump type situation that Justice Sotomayor posited. That might involve concerns about a dragnet search, sweeping in a large number of innocent people. That's not the same concern, I think, directly before the court here, which involves... Well, isn't that the same concern here? And that's why I'm differentiating between incident-related searches and basically dragnet searches when you're looking at what a person is doing over 127, 30, 40, even 24 hours, which is it's not related to any legitimate police need to invade the privacy of a person over a 24-hour period unless there's a suggestion that the crime occurred during that entire 24-hour period. So that's why I asked you, is there a difference between saying if police have cause to believe a crime has been committed, can they ask for records related to that individual crime, even if it happened on one day, a second day, a fourth day, a tenth day, so long as they're limiting their search as related to a criminal activity as opposed to a dragnet sweep of everybody's intimate details? Because right now, we're only talking about the cell site records, but as I understand it, a cell phone can be pinged in your bedroom. It could be pinged at your doctor's office. It can ping you in the most intimate details of your life, presumably at some point, even in a dressing room as you're undressing. So I am not beyond the belief that someday a provider could turn on my cell phone and listen to my conversations. So I'm not sure where your 24-hour rule comes from. Shouldn't your rule be based on incident-related rather than at the essence of your complaint, which is that we're permitting police to do a dragnet search of your life? Your Honor, first, you're absolutely correct that today, in the seven years that have elapsed since the data was gathered in this case, network technology has advanced quite markedly, and today not only is data gathered for phone calls but also text messages and data connections, including when a phone is in a pocket, passively and automatically checking for new e-mails or social media messages or weather alerts. And today the government is able to obtain historical cell site location information that can locate a person as precisely as half the size of this courtroom. Mr. Westlaw, I agree with you that new technology is raising very serious privacy concerns, but I need to know how much of existing precedent you want us to overrule or declare obsolete. And if I could, I'd just like to take you back briefly to Miller and ask on what grounds that can be distinguished. You don't say we should overrule it. You said the information here is more sensitive. We maybe could agree to disagree about that. I don't know. But what else? On what other grounds can Miller possibly be distinguished? Both Miller and Smith identified at least two factors to take into account in the reasonable expectation of privacy analysis. The nature of the records or their sensitivity and whether they're voluntarily conveyed. And I think here there's also a great distinction on voluntariness. Unlike a negotiable instrument passed into commerce or, for that matter, a phone number punched into a touch-tone phone, people, when they make or receive a phone call, receive a text message, and certainly when their phone is automatically making a data connection, do not provide their location information to the carrier. Well, I mean, that's a debatable empirical point, whether people realize what's going on. And there's reason to think maybe they do. I mean, people know there were all these commercials. Can you hear me now? Our company has lots of towers everywhere. What do they think that's about? The contract, the standard Metro PCS contract, seems to say, and I guess we don't have the actual contract in the record here, does seem to say that it advised the customer that we can disclose this information to the government if we get a court order. So I don't know whether that will hold up. And even if it were to hold up today, what will happen in the future if everybody begins to realize that this is provided? If you have enough police TV shows where this is shown, then everybody will know about it, just like they know about CSI information. Three points, Your Honor. First, in the empirical scholars' amicus brief at pages 3 through 4, they run through a result of a survey that I think quite strongly shows that a strong majority of Americans do not understand that this information is even accessible to, much less retained by, the service providers. Second, I agree that the Metro PCS contract in effect in 2010 and the other companies' privacy policies today do disclose that location information can be obtained, but I actually think the disclosures more broadly in those documents accrue to our favor. I'll explain why that is in one moment, although I think I should caution the Court that relying too heavily on those contractual documents in either direction here would, to paraphrase the Court in Smith, threaten to make a crazy quilt of the Fourth Amendment because we may end up with a, you know, hinging constitutional protections on the happenstance of companies' policies. But those contractual documents to a company restate and contractualize the protections of the Telecommunications Act and quite strongly promise people that their information will remain private without consent. And lastly, access is provided by law. Privacy as to other private persons, not as to the government. That's right. There's a provision to disclose as required by law. Those four words need to be read in context and in compliance with the Constitution. So if there is a reasonable expectation of privacy in these records, then a warrant is required. But even looking at the statutory framework itself, the government points to the Stored Communications Act as the law requiring disclosure. But when Congress amended that statute in 1994, it provided two mechanisms for access to records, a 2703D order, as used here, and a warrant under Section 2703C1A. And I think a person looking at that statute would be quite reasonable and right to assume that the reason there's a warrant prong is to deal with records like these in which there's a strong privacy interest. But your argument, as I understood it from the brief and I'm hearing it today, makes the Stored Communications Act and the 2703D order irrelevant. You don't even talk about it. In an area where we're searching for a compromise, where it's difficult to draw a line, why shouldn't we give very significant weight to the Congress's determination that there should be and will be some judicial supervision over these investigations? Justice Kennedy, Congress enacted the Stored Communications Act in 1986 and amended it in relevant part in 1994. Three-tenths of one percent of Americans had cell phones in 1986. Only nine percent in 1994. There were about 18,000 cell towers in 1994. Today, there are over 300,000. You mean the Act was more necessary when there were fewer cell phones? No, not at all. I think it would be just the opposite. Not at all, Your Honor. My point is that Congress quite clearly was not thinking about the existence of and certainly not law enforcement interest in historical cell site location information. There's nothing in the historical legislative record for the members of the Court who would look there to indicate any cognizance of these kinds of records. Well, again, my question is you give zero weight in your arguments to the fact that there is some protection. Your Honor, we acknowledge fully that there is some protection, a touch more than a traditional subpoena because a judge is involved, but we think it is insufficient in the context of records held by a third party in which the subject of the investigation. And yet you said, I think you said in your brief, that in most of the cases where you get one of these 2703G orders, in the mine runner cases, you said, it was probably enough there to get a warrant. So let's take this very case. A confessed robber identifies his collaborators and there are details about the collaborator. Why isn't that enough to get a warrant? In this case, it is quite possible that the government could have. Now, I don't think they stated probable cause on the face of their application for the court order. Mr. Carpenter's name is mentioned only once in the conclusory sentence at the end. They did have a cooperating witness at that point, a cooperating codependent, and I can't say whether had they wanted to, they could have made out probable cause. It's entirely possible. I want to return, Justice Alito, to your question because I think it's important to remember that Miller and Smith were decided four decades ago. The court could not have imagined the technological landscape today. Accepting the government's invitation to, in my view, radically extend those cases would place beyond the protection of the Fourth Amendment, not only those location efforts. From the very beginning, Smith, for example, basically said the disclosure at issue doesn't disclose the content of the conversation. As the dissent pointed out, the provider had access to the content of the conversation. Yet, we drew a line in saying cell phone numbers, telephone numbers are disclosable because everybody knows that the telephone company is keeping track of those numbers. You get it in your phone bill at the end of each month. But we said people don't know, or even if they realize that the phone company can listen into their conversation, that there's a reasonable expectation that the phone company won't, absent some urgent circumstance, a death threat, almost a special needs circumstance. That suggests, as you started to say earlier, that it never was an absolute rule of the third party doctrine. We limited it in Bond and Ferguson when we said police can't get your medical records without your consent, even though you've disclosed your medical records to doctors at a hospital. They can't touch your bag to feel what's in your bag, because an individual may disclose his or her bag to the public. I think one of my colleagues here said, why shouldn't people expect others to touch their bag as well? Well, and the court said no, because you expose what your bag looks like, but you don't have an expectation that people are going to touch your bag. So is it really that far off to say, yes, I can believe that my location at one moment or other moments might be searched by police, but I don't expect them to track me down for 24 hours over 127 days? Absolutely, Your Honor. We agree that the contents of electronic communications should be protected, as I think the government agrees, and it's brief. But in the digital age, content as a category is both under-inclusive and unadministrable. Certainly, I think that's one lesson from Jones, from the concurrences. That was not the contents of communication, it was location over time in public, but it was still protected, and a great many highly sensitive digital records, like search queries entered into Google, a person's complete web browsing history showing everything we read online, medical information or fertility tracking data from a smartphone app would be vulnerable.  I'm not sure I understand that. Would there be a problem with that, in your opinion? No, Your Honor. I think that would fall squarely within the rule of Smith. It would certainly be more voluntary, and I think we can disagree, but I think less sensitive. You think the numbers called, the people that somebody is calling, that's less sensitive than the person's location? Certainly. How are we going to judge the sensitivity of information like this? Well, I think that the concurring opinions in Jones, Your Honor, already judged the sensitivity of this information. The Court need not address every other context. Suppose law enforcement officers had followed this person for 127 days. That would be worse than if they followed him for 24 hours? Well, if the concurrence is made clear in Jones, that would be a highly unlikely endeavor, but even more unlikely here because this is not real time. Hypothetically, suppose it happened. There can be very serious crimes in which law enforcement devotes a tremendous amount of time to surveillance with multiple vehicles, multiple agents, and you say if it lasts for too long, then it's an invasion of privacy? No. I think people's normal expectation is that that typically won't happen, but if it does, the Fourth Amendment does not protect against that. Hypothetically, if we're going to talk about normal expectations, then we have to make the judgment. It seems to me there's a much more normal expectation that businesses have your cell phone data. I think almost everybody knows that. If I know it, everybody does. But I don't think there's an expectation that people are following you for 127 days, which is my hypothetic. I agree, Your Honor. But I think that the concurrence is in Jones laid out an analysis of why there's a difference between using technology to make that kind of detailing possible in every case, as opposed to the very rare circumstance where it might happen. But here, it's even a step more removed. Here, never could police have decided today to track me 24 hours a day, seven days a week, five months ago. That is a categorically new power that is made possible by these perfect tracking devices that 95 percent of Americans carry in their pockets. Mr. Wessler, can I ask you about your understanding of the state of the technology now? The government represents in its briefs, and it has those pictures in its briefs, suggesting that the information that's gleaned from this is very sort of general. It's vague. It doesn't pinpoint exactly where you are. And in order to make effective use of it, it has to be combined with many other pieces of information. And A, do you agree with that? But B, what is your view of the relevance of the fact that information may not be useful in itself, but may be useful in combination with other information? Does that make a difference? Justice Kagan, so on the first point, we agree that as of 2010 and 2011, where the records in this case come from, they were generally less precise than the GPS data in Jones. But we don't think that that makes a difference for the Fourth Amendment rule for a few reasons. First, to go to the second part of your question, even in Jones, the data lacked precision. It was accurate only to within 50 to 100 feet and only tracked where a car went. So if a person parks in a parking lot or on a street, that GPS data by itself can't tell if they go to a jewelry store for a stick up or a medical clinic for a checkup or a cafe to meet with a friend. Some other amount of evidence or inference was required. That makes it no less a search and that the same is true here. Now, in the intervening seven years, the data has become markedly more precise. The proliferation of small cells, which can have a broadcast radius as small as 10 meters, about half the size of this courtroom. The ability now of providers to estimate the actual location of the phone based on the time and angle that the signal from the phone reaches the towers. And the skyrocketing amount of data usage by normal smartphone users means that even the large traditional cell towers are much closer together in urban and dense suburban areas. So the distance between them is less. So they are significantly the location information is more precise. It's also more voluminous because now data connections create location information. And so the 101 data points per day on average, in this case, pale in comparison to what this was. So along those lines, one more kind of technical question. There was a suggestion in the briefs that some of this information is required to be kept by governmental regulation. The E911 program. Do you have any insight on that for us? Yeah, there's no direct requirement that these location records be kept. Now, what is true is that the capability of the cell companies to track cell phones in real time is a government mandate as part of the E911 system. That capability is related to the capability that is relatively newer to estimate the actual location of the phone based on time and angle of the signal historically coming in. But there's no data retention mandate for these historical cell phone location records. Now, so you avoid taking a position on the question in your brief, but I'd like you to take one today. Is there any reason to treat grand jury subpoenas differently than you would treat subpoenas under other legislation? No, I don't think there is any reason. This Court's Fourth Amendment decisions involving grand jury subpoenas is held on to the same Fourth Amendment standard as any other subpoena. Now, a grand jury subpoena is not an issue here, but we think it would be held to the same standard as any other subpoena or subpoena-like request for these highly sensitive records. As I'm seeing your argument, it starts with a place where I completely agree. The village, Snoop, had a fallible memory and it didn't follow people for 127 days. The electronic information is infallible. It can follow them forever. That's a big change. So I agree that that change is there. It's there in many aspects of life, not just location. Now, on the other side of it is that probably, I'm not sure, but probably police and FBI and others, when they get word of white-collar crime, money laundering, drugs, financing terrorism, we could go through the list. Large numbers of cases of important criminal cases. They don't have probable cause. They do have reasonable ground to think. And they start with bank records, with all kinds of financial information, purchases. So if I accept your law, there's no such thing in the law as location. There is, but I mean people immediately say, and why? And then when they say why, we're going to have to say something like X days, at least arbitrary, but X days are very personal. It was given under circumstances where they didn't know they were giving it or they certainly didn't consent to it. And that is basically the reason. Maybe we throw a few other things in there to get an exception from Miller. That will be taken immediately to the lower courts and eventually here. And people will say, well, what about financial information, i.e. credit card purchases? Where the most intimate credit card purchases, wherever they are, are immediately records. And what about, and they'll think of five others. I can only think of one or two, but believe me, the legal profession and those interested in this understand it very well. So where are we going? Is this the right line? How do we in fact write it? Not, you see, for location. I have less trouble with that. But where is it going? Can you say, it's a very open question, but I'm very interested in your reactions. Justice Breyer, I think in future cases in the lower courts and perhaps back before your honors, it would be relatively straightforward to define discrete categories of information that may be protected. I think perhaps certain other types of location records, information about the state of the body, like heart rate data from a smartwatch or fertility tracking data from a smartphone app, information about the interior of a home, for example, from a smart thermostat that knows when the homeowner is at home or perhaps what room they're in. Communicative content, not only the content of emails, but I think search queries to Google. Not every record will or should be protected. And I think it is totally consistent with the role of the lower courts to take an interpretive principle from this court and begin to apply it. And over time, clarity will emerge. You want to add one? Maybe you want to add one thing, because I suspect you'll hear in a minute that all the imperfections of Miller, given your answer, and what I'm thinking too, I quite agree with you. This is an open box. We know not where we go, unadministrable, etc. Anything else you want to add? Your Honor, lower courts have been struggling mightily to apply Miller and Smith to highly sensitive digital age records. As to these historical location records, the five courts of appeals to address this have generated 20 majority concurring and dissenting opinions, many of them virtually begging this court to provide guidance for how to protect these sensitive digital records that the court simply could not have imagined four decades ago. A lot of what you're talking about and a lot of what the question is concerned I think is addressed under the question whether a warrant should issue as opposed to whether a warrant is required. Under current practice, when you're getting a warrant, it makes a difference. If you go in and say, I want to search the entire house for anything I can find, and if you say, I want to search the drawers for business records that we think are related to blah, blah, blah. And so it's the same thing here. Yes, the technology affects every aspect of life, but it doesn't mean that the warrant has to. And in terms of reasonableness, if you can focus on, we want to talk about simply, whatever it is, we have reason to believe he's purchasing the stuff that goes in to make methamphetamine, but that doesn't mean we're going to go look at location information. Your Honor, we certainly think that the probable cause of particularity requirements of a warrant will do a lot of work to focus investigations. In an investigation like this, perhaps 127 days or 152, as the original request was, would not all be appropriate. Maybe under a warrant, a two or three day span around each of the robberies would actually be particularly relevant to the probable cause determination. But our basic submission is that a warrant is required in this context because it's unlike the other subpoena cases that the government has identified. In the normal subpoena case, this court has identified two factors that weigh on the reasonableness categorically of subpoenas. First, that the recipient complies with it. They select the responsive records and provide them to the government, which poses less of a risk of abuse. And second, that there's notice and an opportunity for pre-compliance review. Neither of those obtain here, where the subpoena goes to a third party, but the subject of the investigation receives no notice and has no opportunity... Can you tell me what is the difference between the 2703G order and a warrant? What are situations where you could get the order, but not a warrant? So the standard for issuance of the order is lower. Some lower courts have likened it to a reasonable suspicion standard. I think it's probably a touch above pure reasonableness, but it's certainly short of probable cause. It also lacks a requirement for a sworn statement. There's no affidavit. It's placed before a magistrate judge by a prosecutor, and it lacks a particularity requirement, which has led, in cases, to extraordinarily broad requests. We identify in our reply brief one case where the government obtained 454 days of historical location data for one defendant, 388 for another, 127 days here, 221 days in Graham from the Fourth Circuit, with a cert petition currently pending. That is a quite extraordinary amount of time. If I could, I'd like to reserve the balance of my time. I'm sorry, one quick question. Focusing on the property-based approach, putting aside reasonable expectation for just a moment, what do we know about what state law would say about this information? So say a thief broke into T-Mobile, stole this information, and sought to make economic value of it. Would you have a conversion? Would your client have a conversion claim, for example, under state law? Have you explored that at all? So I think it's possible, and I think conversion is the closest sort of tort analog to what we have here. But we place the source of the property right here in federal law, not state. No, I understand 222. I've got that argument. I'm just wondering, have state courts developed this at all? State courts have not, to my knowledge. I think in roughly analogous contexts like trade secrets, certainly conversion applies, but not directly there. Okay, thank you. Thank you. Thank you, counsel. Mr. Dreeben? Mr. Chief Justice, and may it please the Court, the technology here is new, but the legal principles that this Court has articulated under the Fourth Amendment are not. The cell phone companies in this case function essentially as witnesses being asked to produce business records of their own transactions with customers. The cell systems cannot function without information about where the phones are located. Anyone who subscribes to a cell phone service will communicate that information to towers in order to receive calls. The cell phone companies get that information to operate the cell network. They choose to make their own business records of that information. It's not a government mandate. They make decisions based on their own business needs about what they're going to retain. And when the government comes and asks them to produce it, it is doing the same thing that it did in Smith. It is doing the same thing that it did in Miller. It is asking a business to provide information about the business's own transactions with a customer. And under the third-party doctrine, that does not implicate the Fourth Amendment rights of the company. This is not simply created by the company, though. It's a joint venture with the individual carrying the phone. That person helps the company create the record by being there and sending out the pings. Well, that's certainly true, but it's no less true in Smith and Miller. In order for the phone company to have a record of who a person called, the person has to make the call. The information goes to the phone company. The phone company uses that information to route the call. Here, the cell phone provider gets information from the phone about where the phone is so that it can route calls to the phone and that it can route calls from the phone. That's just the basic technological nature of cell phones, but it doesn't differ in principle from what was going on in Smith. And you could say the same thing about Miller. Somebody has to engage in banking transactions through a bank. They write a check. They give the check to the bank. The bank uses it to carry out the bank's business. No, they don't give it to the bank. They give it to a person who gives it to the bank. Well, Justice Sotomayor, I think that there are a zillion different ways to carry out financial transactions, including some that involve giving a check to a person. Many involve going to the bank directly and having the bank conduct the financial transaction. Anybody who writes a check understands that the check will be submitted to the bank so that the bank can pay. Mr. Chapin, why is it not okay, in the way we said about beepers, to plant a beeper in somebody's bedroom? But it's okay to get the cell phone records of someone who... I don't, but I know that most young people have the phones in the bed with them. All right? I know people who take phones into public restrooms. They take them with them everywhere. It's an appendage now for some people. If it's not okay to put a beeper into someone's bedroom, why is it okay to use the signals that the phone is using from that person's bedroom, made accessible to law enforcement without probable cause? So, Justice Sotomayor, I will answer the question about cell phone location in a house, but I think it's important that the Court understand that this case involves very generalized cell sector information. That's today, Mr. Dreeben, but we need to look at this with respect to how the technology is developing. Well, I think Justice Sotomayor... Who has phones in a bedroom now? Well, there's a distinction between acquiring GPS information from a phone and acquiring cell site information from a business. This case involves acquiring cell site information from a business. It's a wide area. Our brief attempted to illustrate how in Detroit... Well, this is no different than a telephone company having access to your telephone conversations, but we protected those. No, I think it's very different from it. The communications of privacy about the contents of a one-to-one communication or a one-to-many communication are quite different. They grow out of the bedrock understanding that a letter mailed to the mail, the routing information is available to the government, the address of where it's going... Yeah, but in an envelope, you seal the envelope. You can yourself control the public disclosure, but with telephones, the telephone company could have plugged in and listened to your conversation just as easily as these telecommunications companies can read your emails if they choose, yet we've said we would protect email content. That is true, and I think that that is because there is a difference between content and routing information that the court recognized in Smith itself. We're dealing here with routing information. We're not dealing with the contents of communications. I agree with you that Katz makes clear that incidental access of a provider to the contents of a communication when the provider is functioning as an intermediary doesn't vitiate Fourth Amendment protection. We're not here to argue that it does. We're here to argue that routing information of the sort that was available in Smith and the sort that's available here functions as a business record because the business is using it in its transaction with the customer to route the calls. The content information is being provided through a provider as an intermediary so that somebody can communicate with another person. Mr. Treven, how is this different from Jones? You know, in Jones there were a couple of different opinions, but five justices, as I counted, said this. This is from Justice Alito's opinion. Society's expectation has been that law enforcement and others would not, and indeed in the main, simply cannot monitor and catalog every single movement of an individual's there with a car for a long period. So how is it different from that? I think it's fundamentally different, Justice Kagan, because this involves acquiring the business records of a provider which has determined to keep these records of the cell site information. Jones involved government surveillance. It involved attaching a GPS device to the car. Five members of the court regarded that as a trespassory search. Five other members of the court were prepared to analyze that under reasonable expectations of privacy, but in both cases it was direct surveillance of the suspect and the crime. So the question is why that should make more of a difference than the obvious similarity between this case and Jones. And the obvious similarity is that in both cases you have reliance on a new technology that allows for 24-7 tracking. Now, you're exactly right. There were different means, but in both cases you have a new technology that allows for 24-7 tracking and a conclusion by a number of justices in Jones that that was an altogether new and different thing that did intrude on people's expectations of who would be watching them when. So the people who are watching in this case are the phone companies because people have decided to sign up for cellular service in which it is a necessity of the service that your phone communicate with the tower and a business record is generated. People who dial phone numbers on calls know that they're being routed through a cell phone or a landline provider. Those records can be made available to the government. They can be made available for quite extensive periods of time. I think in many ways it's far more revealing to know who a person is calling than to know the generalized cell sector where their phone is located. The cell site information doesn't tell you the person was with the phone. Mr. Dreeben, what do you do with the survey mentioned by your opposing colleague that says that most Americans, I still think, want to avoid Big Brother. They want to avoid the concept that government will be able to see and locate you anywhere you are at any point in time. Do you really believe that people expect that the government will be able to do that without probable cause and a warrant? The Constitution protects the rights of people to be secure. Isn't it a fundamental concept, don't you think, that that would include the government searching for information about your location every second of the day? In instances like this, Justice Sotomayor, involving rapidly changing technology and privacy expectations that are being measured here by surveys, the proper body to address that is Congress. And Congress has been active in this area. This is not an instance of political failure. Well, the question is, was it active? The fact that Congress recognized how sensitive this information is is quite laudatory. But did it understand the measure of the constitutional requirement of what protection should be given to that? And I can defer to Congress's understanding of the privacy needs, but does that create an obligation for me to defer to their judgment of what protections the Constitution requires? The Constitution has always said government can't intrude except in some carefully defined situation, and special needs being foremost among them. Can't intrude on those privacy interests without a warrant. We're not saying they can't ever. They've just got to have articulable facts based on reliable information sworn to in an affidavit that can provide probable cause to believe that this individual is involved in criminal activity. That's not a new standard. That's an old standard. But the new standard here would be saying that the business records of a third party, when acquired by the government, constitute a certain... We have said, you know, we have made exceptions all the time. Ferguson, Bonn. Even in creating Smith & Miller, we created an exception. People disclose the content, the telephone calls, to third parties. But we said the government can't intrude without a warrant in that situation. I think there was a well-developed framework at the time of Smith & Miller that the court applied to Smith & Miller. And it basically says, in our society, if you communicate information to a third person, the public has an interest in that person's witnessing of what they heard or what they said, and it can acquire it through means short of a warrant. That was the basic framework that led the court in Katz to conclude that what you maintain privately in your house or in the content of your phone calls requires special process. Mr. Dreeben, I'd like to drill down on that and return to Justice Kagan's question. The facts here wind up looking a lot like Jones. One thing Jones taught us and reminded us, really, is that privacy also has to be considered, not just the reasonable expectation approach. So if we put aside the reasonable expectation approach for just a moment, Katz, Miller, Smith, and ask, what is the property right here? Let's say there is a property right. Let's say I have a property right. In the conversion case, I posited with your colleague so that if someone were to steal my location information from T-Mobile, I'd have a conversion claim, for example, against them for the economic value of the property. Wouldn't that, therefore, be a search of my paper or effect under the property-based approach reminded us of the Jones? I suppose that if you are insisting that I acknowledge that it's a property right, some consequences are going to follow from that. Let's stick with my hypothetical counsel. I know you don't like it. I got that. I don't like the fact that I've got positive law that indicates it is a property right. Would you, therefore, agree that that's a search of my paper and effect? I wouldn't. Why not? Because it's not your paper or your effect. If property law says it is. I don't think property law does say that it is. That's fighting the hypothetical counsel. I didn't like hypotheticals, too, because my hypothetical is that it creates a property interest out of transfers of information. Please could you stick with my hypothetical and then you can tell me why it's wrong. Under my hypothetical, you have a property right in this information. Would it be a search of my paper and effect? Yes or no? I am not sure. And the reason that I am not sure is there has never been a property right recognized in this character. If we were talking about e-mail, as Your Honor's opinion in Ackerman sought to analogize to property, I think we would have a more complex discussion about it. I'm not sure that it would achieve any different result. You're not here to deny that there might be a property interest and therefore a search? No, I'm here to deny there's a property interest in cell site information about e-mail. In my hypothetical, if there were a property interest, would it be a search?   in cell site information about e-mail. Okay. And the reason that I can't concede it is it's a property right that resembles no property right that's existing. Yeah, Mr. Dunn, along those lines, I was trying to think of an example of the situation in which a person would have a property right in information that the person doesn't ask a third party to create. The person can't force the third party to create it or to gather it. The person can't prevent the company from gathering it. The person can't force the company to destroy it. The person can't prevent the company from destroying it. And according to Petitioner, the customer doesn't even have a right to get the information. So, Justice Alito, those are a lot of good reasons why it should not be recognized as a property interest. I can't think of anything that would be characterized as a property interest with those traits. And it would be really a watershed change in the law to treat transferred information as property. What does Section 222 do other than declare this customer proprietary network information that the carrier cannot disclose? It does that in conjunction with a provision that it shall be disclosed as required by law. So, let me ask you that. So, the government can acknowledge a property right, but then strip it of any Fourth Amendment protection. Is that the government's position? No. So, could we also say maybe that they also get this property right subject to having a non-Article III judge decide the case or quartering of troops in your home? Could we strip your property interests of all constitutional protection? Well, those are pretty far afield. I think what's going on here is that Congress has set up a regime to protect privacy interests in the information. I think this is also an illustration of why this court does not have to leap ahead with the Fourth Amendment to constitutionalize interests in property. And Congress has calibrated under what circumstances that privacy interests shall be protected. It yields in the face of legal statutes that Congress has also passed. But does Congress's determination also yield in the face of the Fourth Amendment? It does not. It does not. The Fourth Amendment is trumped by the statute. But what interests the statute... In the government's view. Is that right? The statute trumps the Fourth Amendment? I think I said the opposite. Oh, good. All right. So, I think we're on common ground that... So, the Fourth Amendment controls not what the statute says with respect to the disclosure of the information. The Fourth Amendment applies once the court has identified what interests the statute creates. Right. The statute creates customer proprietary information in Section 222. And then the Fourth Amendment will determine when it can be revealed. Right? No. The statute actually... Why does the statute control the Constitution? I think you are saying the statute controls the Constitution. No, I think that the interest that the statute creates have to be looked at as a whole. And this Court has been very careful to... So, the bitter with the sweet. Yeah, I know the Court has rejected that in the due process context. But here we are looking at what interest Congress has sought to... So, why couldn't Congress also say you don't get an Article III judge to determine this issue? That seems so non-germane to what Congress was trying to do. In Section 222, what Congress was trying to do was to say, look, the companies are collecting a large amount of information. We recognize that there are privacy interests in this. We want to give recognition to those privacy interests. We do not want to give recognition to those privacy interests. I would read the phrase customer proprietary information to mean that it is proprietary to the cell phone company. And therefore, not to the customer. It's customer information, but it's proprietary information about the cell phone company. Because if you got that information in the aggregate, you could tell a lot about the company's operation. I assume that that kind of information would be available to the FCC. So if the FCC obtained it, they would have to treat it as proprietary information of the company. Am I wrong in that? I'm not sure that that is the way that Congress intended it, but I think that what is significant is not the label, but what actual underlying rights were created. Well, if it were proprietary to the customer, in what sense is it proprietary to the customer, since it has all of those attributes that I mentioned? Well, the government said to telecommunications providers, you cannot use this kind of information. You can't keep it. Yes, I'm sure that in regulating the telephone companies, there would be a broad range. So what's the difference between that and saying, if you want to create this information, you are taking this information from customers, and it's the customer's information. You can't disclose it without the customer saying yay or nay. Isn't that what Congress did? No, because Congress provided that it shall be disclosed as required by law, and the same Congress... Then you're begging the question, which is what does the law, the Fourth Amendment, require in those circumstances? You're saying Congress can set the level of what the Constitution requires, but I don't know that that's true. Well, I think it's definitely not true. This Court is the arbiter of the Fourth Amendment, but it has already decided that question. It has decided two things. One, under the third-party doctrine, business information that is obtained from a company in the ordinary course of its business is not a search of the customer. Is it the third-party information when Congress says it's customer information? Well, Congress can say a lot of things, and I think that the important thing that this Court has said as a corollary to my point about what the third-party doctrine is,  Court has made clear that state laws that provide additional enhanced privacy protection do not alter Fourth Amendment baselines. It said that in the  Amendment, there is an expectation of privacy above and beyond what the Fourth Amendment required, and the Court said we don't measure Fourth Amendment rules about privacy expectations in text messaging by what Congress has provided in the context of the communications act. I think that's important. I just want your reaction to what I asked the other side. I agree with you that the law is, at the moment, third-party information is third-party with a few exceptions, but it may be that here another exception should exist for the reason that the technology since the 1990s has changed dramatically to the point where you get the cell phone information, the tower information, and put it together in a way that tracks a person's movement for 274 days or whatever is an unreasonable thing for the government to do. Assume that's so. Now, one thing that is bothering me about that line is what I said before. I would like your reaction as to how to draw such a line if we draw it. I'll be very specific about the through. I said, and I didn't have much basis in your brief for saying it, is it true that it's quite frequent or at least not abnormal for the government when faced with reason to believe that there are security violations, all kinds of things like that, that they do go to banks and they do ask for purchase information without a warrant. Just reasonable. You don't want that interfered with. But it may not worry you so much that they can't track a person's physical, which is like his body, where it is, and the technology has changed dramatically there. Maybe it's an unfair question to ask you. But how would you draw that line? That's the problem. I don't think it can be drawn coherently. Well, why not just say what he said on the other side? What's wrong with that? What we say is, look, what we have here is many, many days of the government taking previously unavailable tower information at the time of Miller, et cetera, now putting it together in order to track where this human being has been for a long period of time, something that never could have been gotten before, and to do that without some probable cause is an unreasonable thing. What's wrong with that, as an exception, weddled onto the basic rule? It doesn't have a coherent principle that will explain why a similar rule shouldn't be applied to credit card records or debit card records or records of one's travel through Uber or through a myriad of other kinds of digital records that are created. Maybe it does have a principle. Maybe the principle is that look at the exception they've made for diagnostic hospital records. That is an exception, and it has to do with physical bodies and it has to do with the private information related to those physical bodies, and here, if in fact there are similar things in similar circumstances of highly private information, you draw several factors there, and you have it over here. If you have the similar thing, all those factors are met in these other cases, so be it. So, Justice Breyer, there is a significant difference between the kinds of cases you're talking about involving direct governmental searching activity and governmental acquisition of information from businesses. The government is not monitoring the movements of this person by tailing somebody in multiple cars even over 127 days. What we're talking about here is the distinction between the government going and getting information from an individual and the government going to a business and asking the business to serve as a witness, and I think your Honor's point about how investigations proceed is exactly right. What the government does at the early stages of an investigation is reach out to third parties because it may not have enough information about whether a crime has been committed or whether a particular individual is culpable for that crime. It goes to third-party providers who have information that allows them to narrow the field to find out what's going on. If there's a shooting into a house, someone's killed, and witnesses say the shooter was running away with a cell phone, and the police asked the company to release all information about cell phones in that area, you don't have to go to get a 2703D order. We do have to get a 2703D order. Even for a blanket search? I think what Justice Sotomayor described earlier is getting power information. We used exactly that technique when a bullet was fired through the window of a federal judge in Florida, and the government did not have a clear idea of who the suspects would be. It attempted to narrow down the field. But you did need an order? Yes. We did need an order, and we got an order. I think this is another answer to your concern, Justice Breyer. Not only are we going to less sensitive sources of information at the early stages of an investigation to gather information and figure out what the criminal activity is and who might be inculpated in it, but we also are operating under a statutory regime that requires us to make a particularized showing. It's not the case that we can just walk in. Mr. Dreeben, that could go away tomorrow. The question here is the constitutional question, not the statutory one. Can I take you back to the essential identity between the public  the public? I recall that when you were here in the Jones case, your theory for why that was permissible was essentially that you had given that information to the entire public. In other words, just by being in the world, everybody sees you, everybody watches you, and you've lost your expectation of privacy in that way. Now, we pretty conclusively rejected that argument. Why is it different when it's giving it to one person, the same information, this 24-7 tracking, than we said it was when you give it to the entire world? I think that it is fundamentally different in the means that we chose to employ in Jones versus this case, and it's also different in what information we're acquiring. We did not acquire in this case 24-7 tracking of the precise movements of an individual everywhere he went. We acquired information of the cell tower where a call was made   who was in the cell tower. Let's assume you could. Let's assume Mr. Wessler is right that the technology keeps on getting better and better, more and more precise. It's not 10 football fields anymore. It's half of this courtroom. Next month it may be an eighth of this courtroom. We did not design on more precise information that involves 24-7 tracking. This information is just simply far more similar to what was going on in the Smith case where we got dialed phone numbers that would reveal a much more precise location where the dialed phone number came from and the person that was being spoken to. This case does not present the court with the opportunity to decide the kind of granularity that petitioner posits may happen in the future. And if it does happen... Would it be permissible for the government to ask a cell phone company for lifetime information? Not under the current statutory regime. No, under your view of the Constitution. I think it would be highly questionable under the Constitution and here's why. Providers which are hardly shy about asserting Fourth Amendment rights have protections against unduly broad subpoenas that this court has recognized in a line of cases summed up in Donovan v. Longsteer. There has to be a showing of relevance. There has to be a showing of congressional authorization. There has to be a showing of specificity.  cannot be unduly broad so as to be unduly burdensome. Those protections are available in the magistrate's decision whether to issue the subpoena or not. There is a long-standing recognition in this court's cases that unduly broad subpoenas are subject  squashed under Fourth Amendment principles. The principles that are considered in that context are raised by the provider that the court has recognized that they can include the sensitivity of the information. This court expressly said there is a lot of sensitive banking information that is going on here. There are other protections besides abolishing the third party protection   court has recognized. In response to your question, could the government just walk in with a subpoena and get a lifetime of this information? No. I don't think we could. We are still limited by basic Fourth Amendment principles that apply even to subpoenas where there is not additional protection. In order to see the difference between this case and Jones, isn't it necessary to go back to old Supreme Court cases that explain how the Fourth Amendment applies to a subpoena? No.  don't think that asking a party or ordering a party to produce documents is not a search in the literal sense of the word, nor is it a seizure in the literal sense of the word. But cases going back to Boyd and Hale versus Henkel, old cases, say that it's a constructive search. But in the situation where there is a constructive search, the Fourth Amendment standards that apply to a literal search are different. So it's a fundamentally different framework. It is a completely different framework because of a lesser degree of complexity. So, you've got the answer right there. How do we distinguish this case from all the cases where you want to get the commercial information in respect to the commercial information, banking, and all the things for white collar crime? It's commercial information. And you have the answer right there. Now, I can imagine writing a paragraph like that and saying, leaving the other for the future. Does that work? I know you say no, but I need to know the reason. The basic principle here in the Fourth Amendment is how the government acquires information matters, not the sensitivity of the information. I have to disagree, Justice Breyer, that medical information is given heightened protection under the Fourth Amendment. But the diagnostic test? Well, no. The Ferguson case, which I think you're referring to, involved a compelled search by the government. A urine test that the court assumed was given without informed consent. So it was a government search by government hospital personnel that acquired the urine for law enforcement purposes. That's the government search. I think this also answers Justice Sotomayor's question about acquiring GPS information under E-911 from a handset. The government reaches into the phone, pulls out information. That, I would concede, is a search. What we're doing here is not going to the individual and extracting information from him. We're getting information from a third-party provider relying on the phone. That line of cases was developed in a period in which third parties did not have this kind of information. In the dissenting opinion in Smith, Justice Stewart warned that you're getting incredibly intimate information when you get the phone numbers of people who you have called. I would submit that if the court thinks about it, the information you get if you know who you are calling and the inferences you can draw about what kinds of conversations people are having are extremely sensitive. If I understand what you're saying, you're  saying, well, because the government is going to a third party here and doing it by subpoena, it doesn't matter how sensitive the information is. It doesn't matter whether there's really a lack of voluntariness on the individual's part in terms of conveying that information to the third party. And we don't think that the government is doing this by subpoena rather than by setting up its own cell towers. I don't think I did say that, Justice Kagan, because there's an element here of voluntariness and deciding to contract with a cell company just like there's an element of voluntariness in getting a landline phone and making sure that   be in a cell phone business these days if you want to have a cell phone. I agree with you that Riley did point out that cell phones were necessities. The dissents pointed out that a private telephone has become a necessity of business and personal life. And a bank account is a necessity of carrying out financial transactions. Justice Kagan, what do you do in bringing up Riley? But the distinction you made between you say it's the means that the government is using we must be concerned about, not the information it obtains. But in Riley, it was the most traditional means. It was a search incident and the rest. Yes, it was a search. And I think that's the key point. The court in footnote one of Riley actually reserved whether acquiring aggregated information through other means would be subject to a restriction of the original understanding of the constitution and writs of assistance. John Adams said one of the reasons for the war  use by the government of third parties to obtain information, force them to help as their snitches and snoops. Why isn't this argument that the third parties involved can get anything we want? I think the search is being carried out under a writ of assistance by a government agent operating under government authority. Whereas here, if there's a search in the acquisition of cell site information, there's a company that's acquiring that information without governmental instigation. I don't think a subpoena is an equivalent of a writ of assistance. A writ of assistance allows the agent to go into any house to rip open anything. You can subpoena anything that any company has anywhere in the globe regardless of any privacy interests simply because it's a third party. I think there's a traditional understanding that subpoenas stand on a different footing from search warrants. They do that because they're less intrusive since they do not require the government going into private property. Why does that make a difference? The subpoena tells the person who gets it this is what you have to do. Why is that less intrusive? The whole question is whether the information is accessible to the government. I think most basically it makes a difference because this court's cases have said so from time immemorial. If I go into your house to search I will expose a great deal of additional information to government view beyond what is thought by the terms of an authorization. The difference here is that the interposition of a neutral magistrate between the government and the acquisition of information and it does require a showing that is less than probable cause but  what a traditional subpoena requires. Congress has properly calibrated the balancing of interest and the court should affirm it as a subpoena. Justice Alito, to your question, I think this court made absolutely clear that the historical pedigree does not automatically determine the outcome in the digital age. The search incident had its origins at least a century before the framing of the Supreme  I think it's revolutionary to fundamentally change the understanding of the applications of the Fourth Amendment to subpoenas. Do you want us to do that? I don't think it's revolutionary at all. I think the reason is the government does not recognize that the content of electronic communications should be protected. Once we recognize that there's an exception for the content of e-mails, we've already acknowledged that the subpoena doctrine can't stand in its most severe form. If the content of e-mails  protected, they are accessible to and accessed by the service providers as the government has argued in other cases. If they're to be protected, it's because of their sensitivity and people's long-standing expectations that their communications are highly sensitive and would remain private and as the concurrence recognized in Jones, also highly private and sensitive are these kinds of longer term location records. Second, I just want to highlight that the government as I heard him conceded that the precision of these records doesn't matter at all to the government's theory here. They could be precise, I take it to within a single inch and the fact that a third party has custody of them would initiate any expectation of privacy which we think would be a very destructive rule. Third, this is not an area of rapidly changing technology. We are well over two decades into the cell phone age. This is an area where people's use of the technology is well settled and only becoming more pervasive over time. We know the direction. The case is before the court now and it is crucial that the court act. Finally, to the property principles, first, one statutory point, section 222 C2 gives the customer the right to obtain information. The carriers have not reliably complied with that. You said in your brief that companies wouldn't comply. I don't know what the state of play is today. As of a few years ago, the last time I have information, they were not complying. Under fourth amendment principles, it is common for a property right to be divided between different parties. Here, people have a right to exclude and a right to determine use of the property. If the court has no further questions, we ask that you reverse the fixation. Is any of this going to do any good for Mr. Carpenter? Is he going to get anything suppressed? If a search is conducted in reliance on a statute authorizing the search in accordance with a certain procedure, the exclusionary rule doesn't apply. May I answer? Thank you. So that question is not before this court. It will be dealt with on remand. I think we have arguments on both of the prongs of the good faith exception. On the statutory prong, the communications act provides two mechanisms, order and a warrant. We think that makes this fundamentally different than other statutes that may clearly provide a means. Second, on the court order, this is unlike a warrant. All of this court's cases have dealt with warrants based on affidavits from an            affidavit and the court order as well. We have the opportunity in our case to look at the court order and see if it